IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

MARK SILVER and LAURA SILVER,    *
Individually and as Next
Friends and Parents of Leslie    *
Erin Silver, a minor child,
                                 *
     Plaintiffs,                           CASE NO. 4:12-CV-5 (CDL)
                                 *
vs.
                                 *
BAD BOY ENTERPRISES LLC, BB
BUGGIES INC., and TEXTRON INC.,  *

     Defendants.                 *
_____

O R D E R

On September 17, 2011, Leslie Erin "Elle" Silver ("Elle")
was driving a 2008 Bad Boy Buggy vehicle when she had a
serious accident.  As a result of the accident, Elle's left
foot and part of her left leg were severed.  Elle's parents,
Plaintiffs Mark and Laura Silver ("Plaintiffs"), brought this
action against Defendants Bad Boy Enterprises LLC ("BBE"), BB
Buggies Inc. ("BB Buggies"), and Textron Inc. ("Textron").  In
their Complaint, Plaintiffs assert the following claims
against all Defendants: defective design, defective
manufacturing, failure to warn, and failure to
recall/retrofit.  BB Buggies and Textron ("Textron
Defendants") seek summary judgment, arguing that they cannot
be held liable under any of these theories because they did

not design, manufacture, or sell the 2008 Bad Boy Buggy vehicle and because they did not assume a duty to warn or a duty to recall when BB Buggies acquired certain assets and assumed certain liabilities of BBE. For the reasons set forth below, the Textron Defendants' summary judgment motion (ECF No. 57) is granted in part and denied in part. The Textron Defendants' motion is granted as to Plaintiffs' defective design, defective manufacturing, and failure to warn claims. The Textron Defendants' motion is denied as to Plaintiffs' failure to recall claim.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

2

FACTUAL BACKGROUND

The record viewed in the light most favorable to Plaintiffs reveals the following. Unless otherwise noted, the facts are undisputed for summary judgment purposes.

## I.   The Vehicle

The vehicle at issue in this action is a 2008 Bad Boy Buggies Classic vehicle ("the Vehicle"). BBE manufactured the Vehicle in September of 2008. The Vehicle was owned by Jim Hardin. Pls.' Statement of Material Facts Ex. F, Silver Aff. 1, ECF No. 60-6; Pls.' Statement of Material Facts Ex. L, Hardin Aff. 1, ECF No. 60-12.[1]   Mr. Hardin purchased the Vehicle along with several other Bad Boy Buggies Classic vehicles directly from the factory in Natchez, Mississippi. Silver Aff. 1; Hardin Aff. 1.

On September 17, 2011, Elle was driving the Vehicle. She was thirteen years old at the time. The Vehicle suddenly accelerated as Elle went into a turn. E. Silver Dep. 77:23-78:17, ECF No. 68-1 ("It was accelerating faster than what my foot was pushing on the pedal."). Then the Vehicle tipped over and fell on its side. *Id.* at 107:5-108:21. As a result of the accident, Elle sustained serious injuries to her leg.

---

[1] According to the Textron Defendants, however, BBE loaned the Vehicle to Mr. Hardin's business. Brower Dep. 125:15-126:8. At this stage in the litigation, the Court must view the evidence in the light most favorable to Plaintiffs. *Anderson*, 477 U.S. at 255. The evidence viewed in the light most favorable to Plaintiffs establishes that Mr. Hardin purchased the Vehicle.

## II.  BB Buggies, Textron, and the Asset Purchase Agreement

Since the Vehicle was manufactured and sold by BBE, it is important to understand the connection between BBE, BB Buggies, and Textron to evaluate the liability of BB Buggies and Textron.  BB Buggies incorporated as a Delaware corporation on August 31, 2010.  Textron is the parent corporation of BB Buggies.

BB Buggies agreed to purchase selected assets and assume certain liabilities from BBE.  BB Buggies and BBE memorialized the terms and conditions of the asset purchase in an asset purchase agreement on October 12, 2010 ("Purchase Agreement"). *See generally* Defs.' Mot. for Summ. J. Ex. D., Rupp Decl. Ex. 2, Asset Purchase Agreement (Oct. 12, 2010), ECF No. 57-8 at 10-80 [hereinafter Purchase Agreement]; *accord* Pls.' Statement of Material Facts Ex. D, Unredacted Asset Purchase Agreement Excerpts, ECF No. 60-4 [hereinafter Unredacted Purchase Agreement].  This purchase was consummated after the Vehicle in question was sold but before the accident occurred.  The Purchase Agreement defines which assets BB Buggies agreed to purchase and which assets BBE agreed to retain.  Purchase Agreement ¶¶ 1-2.  The Purchase Agreement also defines which liabilities BB Buggies agreed to assume from BBE and which liabilities BBE agreed to retain.  *Id.* ¶¶ 3-4.  Specifically, BB Buggies agreed to assume "all liabilities . . . other than

4

the Retained Liabilities," including certain contractual obligations and product warranties. *Id.* ¶ 3. BB Buggies did not agree to assume liability—and BBE retained liability—for "all Litigation filed against and Claims noticed to [BBE] prior to the Closing Date, and all Litigation filed against and Claims noticed to [BBE or BB Buggies] after the Closing Date arising out of or related to any Products manufactured, assembled or sold on or prior to the Closing Date." *Id.* ¶ 4(b). Therefore, BB Buggies did not expressly agree to assume any liability related to the Vehicle in question as part of the Purchase Agreement since the Vehicle was manufactured prior to the closing date and the claim was asserted after the closing date. Moreover, Textron was not even a party to the Purchase Agreement. Consequently, Plaintiffs cannot rely on the Purchase Agreement to support their claims against BB Buggies and Textron.

BBE also retained liability for costs and expenses of any Consumer Products Safety Commission Recall, National Highway Traffic Safety Administration recall, or BBE "warranty or field campaign" arising out of alleged product defects relating to unwanted acceleration for products manufactured, assembled, or sold within one year after the closing date. Unredacted Purchase Agreement ¶ 4(c). Although BBE remained liable for the costs and expenses associated with a recall and

agreed to indemnify BB Buggies for those expenses as well as any other costs and expenses associated with liabilities that were specifically retained by BBE, the Purchase Agreement did place control over any recall with BB Buggies.  The Purchase Agreement states that BB Buggies "shall control the conduct of any recall or retrofit campaign, regardless of whether such campaign is subject to [BBE's] indemnification obligation." Unredacted Purchase Agreement Excerpt ¶ 15(h).  The Purchase Agreement further provides: "[BB Buggies's] control of such campaign shall not alter [BBE's] indemnification obligations hereunder.  [BB Buggies] shall provide [BBE] periodic reports on the progress of any such campaign, and will advise [BBE] of any material alteration to the then current plan for the campaign." *Id.*

BBE and its members also agreed in the Purchase Agreement not to dissolve or liquidate BBE for at least twenty-four months after the Closing of the Purchase Agreement, though there is evidence that BBE actually did file for dissolution during 2011.  Pls.' Statement of Material Facts Ex. J, Certificate of Dissolution, ECF No. 60-10 at 2-3.

**III. Manufacture of Bad Boy Buggy Vehicles**

Before the Purchase Agreement, neither Textron nor BB Buggies manufactured, designed, sold, or distributed any Bad Boy Buggy vehicle.  After the Purchase Agreement, employees of

BB Buggies and E-Z-GO, a division of Textron that produced electric vehicles similar to the Bad Boy Buggy vehicles, took over the manufacturing operations for Bad Boy Buggy vehicles. Shortly after the closing of the Purchase Agreement, manufacturing operations were transferred from BBE's manufacturing facility in Mississippi to E-Z-GO's facility in Georgia. E-Z-GO now manufactures Bad Boy Buggy vehicles. E-Z-GO has made changes to the Bad Boy Buggy vehicles, including changes to the vehicle's hip restraint. Also, various changes to the throttle pedal design were implemented on the 2010 Bad Boy Buggy Classic model.

## IV.  Recalls of the 2008 Bad Boy Buggy Classic Model

There were three recalls of the 2008 Bad Boy Buggy Classic model. All three recalls were conducted to install components to prevent unintended acceleration. The Textron Defendants "admit that a 2008 Bad Boy Buggy Classic model may have been subject to three recalls, depending on when it was manufactured during this model year." Defs.' Resp. to Pls.' Statement of Material Facts ¶ 17, ECF No. 68. BBE conducted the first recall in 2008.[2] The second recall, which occurred in 2009, was a voluntary recall by BBE in cooperation with the U.S. Consumer Product Safety Commission. Pls.' Statement of

---

[2] The Textron Defendants contend that the changes indicated by the 2008 recall were likely incorporated into the Vehicle when it was manufactured, but they did not point the Court to evidence on this point.

Material Facts Ex. G, News Release, U.S. Consumer Product Safety Comm'n, Off-Road Utility Vehicles Recalled by Bad Boy Enterprises Due to Crash Hazard (Oct. 21, 2009), ECF No. 60-7. That recall addressed a "crash hazard" due to unexpected acceleration and applied to Bad Boy Buggy Classic model vehicles with "serial numbers between 85004828 and 95010404." *Id.* After the closing of the Purchase Agreement, Textron "assumed maintenance of the recalls." Brower Dep. 128:16-22, ECF No. 72; *accord id.* at 105:20-24 (stating that Textron employee Jeff Miller became responsible for completing the recalls).

The third recall, which occurred in 2010, was a voluntary recall by BB Buggies in cooperation with the U.S. Consumer Product Safety Commission. Pls.' Statement of Material Facts Ex. H, News Release, U.S. Consumer Product Safety Comm'n, BB Buggies Recalls Classic Bad Boy Buggies Again Due to Crash Hazard (Dec. 22, 2010), ECF No. 60-8 [hereinafter 2010 News Release]. Like the 2009 recall, the 2010 recall addressed a "crash hazard" due to unexpected acceleration. *Id.* The 2010 recall news release noted that BB Buggies had received "reports of unexpected acceleration, including reports of arm and leg fractures." *Id.* The 2010 recall involved "all Bad Boy Classic model off-road utility vehicles manufactured from early 2003 through May 2010." *Id.* E-Z-GO, a division of

Textron, is currently handling the recalls.  Brower Dep. 43:9-14.

The Textron Defendants cannot seriously dispute that a 2008 Bad Boy Buggy Classic vehicle that was purchased from the factory was subject to one or more of the previously described recalls.  *E.g.,* Brower Dep. 42:17-21, 111:19-22.  It is undisputed that approximately seventy percent of the vehicles subject to one or more of the three recalls have not been recalled.  Elle's father, Mark Silver, "never received notice from [the Vehicle's owner] Mr. Hardin or from Bad Boy that would indicate that there was a problem with the vehicle." Silver Aff. 2.  Mr. Hardin never received "any warning or information regarding a Bad Boy recall for any of the Buggies that [he] purchased."  Hardin Aff. 2.  The Textron Defendants did not point to any evidence that a recall notice was sent to Mr. Hardin.

**V.   Warnings Regarding the Bad Boy Buggy Classic Model**

After the manufacturing of the Bad Boy Buggies vehicles transitioned to E-Z-GO, BB Buggies began placing new warning labels on newly manufactured vehicles.  According to Plaintiffs, these new labels were more explicit with regard to the warning on use by minors.  Plaintiffs assert that if they

had been warned not to let a minor drive the Vehicle, they would not have let Elle drive the Vehicle.[3]

Plaintiffs also assert that they should have been warned about the potential for unintended acceleration. As discussed above, the Textron Defendants were aware of the hazard of unintended acceleration. *See* 2010 News Release (addressing "crash hazard" due to unexpected acceleration).

The Textron Defendants admit that they made no effort to issue the stronger warnings to people who had previously bought the Bad Boy Buggy vehicles prior to the consummation of BB Buggies deal with BBE.

---

[3] Defendants assert that BBE had an 18-year-old restriction. Defendants, however, point to no evidence that the restriction was communicated to purchasers or users of the 2008 Bad Boy Classic model. In their reply brief, the Textron Defendants argue that BBE actually did provide such a warning in the 2008 Vehicle Manual for the Bad Boy Classic. Defendants represent that the 2008 manual stated: "The Buggy should never be operated by persons 18 years of age or under." Defs.' Reply Br. in Supp. of their Mot. for Summ. J. 9, ECF No. 67. In support of this statement, the Textron Defendants point to the Limited Warranty page of a document entitled "Important Information" regarding Bad Boy Buggies. Defs.' Reply Br. in Supp. of their Mot. for Summ. J. Ex. L, Important Information re Bad Boy Buggies, ECF No. 67-2 at 3. Though the Textron Defendants represent that the document is the 2008 vehicle manual for the 2008 Bad Boy Buggy Classic model, the document does not on its face establish what year it was issued, and Defendants did not point to any evidence to establish the year of the document. Moreover, Defendants did not point to evidence that Plaintiffs or Mr. Hardin, the owner of the Vehicle, actually received the document. Therefore, the Court cannot conclude as a matter of law that BBE informed purchasers or users of the 2008 Bad Boy Classic model that the vehicle should not be operated by children.

DISCUSSION

In their Complaint, Plaintiffs assert claims against the Textron Defendants for defective design, defective manufacturing, failure to warn, and failure to recall/retrofit. Plaintiffs concede that the Textron Defendants "are entitled to summary judgment on Plaintiffs' claims regarding the manufacture and design of the 2008 Bad Boy Classic Model." Pls.' Resp. to Defs.' Renewed Mot. for Summ. J. 1, ECF No. 58. Therefore, summary judgment is granted in favor of the Textron Defendants on the defective design and defective manufacture claims.

Plaintiffs' remaining claims against the Textron Defendants are for failure to recall and failure to warn. At the outset of this litigation, it appeared that Plaintiffs intended to assert claims based on a successor liability theory arising from BB Buggies's purchase of the assets and assumption of some of the liabilities of BBE. However, the summary judgment briefing reveals that Plaintiffs have abandoned that theory. Plaintiffs assert that whether the Textron Defendants "are successor corporations to BBE is not relevant" to their failure to recall and failure to warn claims because the Textron Defendants "assumed the duties to recall and warn, both gratuitously and contractually." *Id.* at 7. This narrows the Court's analysis to whether sufficient

11

evidence exists to create a genuine fact dispute as to the
Textron Defendants' alleged failure to recall the Vehicle in
question and/or to warn against the safety hazards associated
with it.

## I.  Failure to Recall Claim

Plaintiffs argue that the Textron Defendants assumed a
duty to recall the Vehicle but failed to exercise ordinary
care in conducting the recall campaign.  Georgia law generally
imposes no duty upon a manufacturer to recall a product after
the product has left the control of the manufacturer.  *Ford
Motor Co. v. Reese*, 300 Ga. App. 82, 85, 684 S.E.2d 279, 283-
84 (2009).  An important exception to this rule exists: "if a
manufacturer chooses to recall a product voluntarily, Georgia
law imposes a duty upon the manufacturer to exercise ordinary
care in conducting the recall campaign."  *Id.* at 85 n.2, 684
S.E.2d at 283 n.2.   In addition, if a product dealer
"voluntarily agrees to notify its customers of a product
recall and to mail notices provided by the manufacturer," it
has a duty to exercise ordinary care in conducting the recall
program.  *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 198,
375 S.E.2d 117, 120 (1988).  This rule applies "to those
situations where the alleged tortfeasor's performance is to be
substituted *completely* for that of the party on whose behalf
the undertaking is carried out."  *BP Exploration & Oil, Inc.*

12

*v. Jones*, 252 Ga. App. 824, 831, 558 S.E.2d 398, 405-06 (2001) (internal quotation marks omitted).

In this case, a reasonable jury could conclude that the Textron Defendants undertook a duty to conduct a recall program related to the 2008 Bad Boy Buggy Classic model vehicles.  First, BB Buggies agreed in the Purchase Agreement to "control the conduct of any recall or retrofit campaign." Unredacted Purchase Agreement ¶ 15(h).  Second, the news release issued by the U.S. Consumer Product Safety Commission stated that the 2010 recall was "being performed by BB Buggies Inc., which recently acquired certain assets of Bad Boy Enterprises, LLC."  2010 News Release.  Third, there is evidence that Textron and/or E-Z-GO, a division of Textron, is actually handling the recalls.  Brower Dep. 43:9-14, 105:20-24, 128:16-22.  Based on this evidence, a genuine fact dispute exists as to whether the Textron Defendants undertook a duty to conduct a recall program related to the 2008 Bad Boy Buggy Classic model vehicles.

A reasonable jury could also conclude that the Textron Defendants failed to exercise ordinary care in conducting the recall program.  Again, the Textron Defendants cannot seriously dispute that a 2008 Bad Boy Buggy Classic vehicle, such as the one in question, was subject to at least one of the recalls controlled by the Textron Defendants.  *E.g.,*

Brower Dep. 42:17-21, 111:19-22.  Evidence exists from which a jury could conclude that Mr. Hardin purchased the Vehicle directly from the factory.  Hardin Aff. 1; Silver Aff. 1.  And evidence also exists that Mr. Hardin, the owner of the Vehicle, never received a recall notice.  Hardin Aff. 2. Furthemore, the Textron Defendants pointed to no evidence that a recall notice was ever sent to Mr. Hardin.  A genuine fact dispute exists as to whether the Textron Defendants failed to exercise ordinary care in conducting the recall program.

For all of these reasons, the Textron Defendants' motion for summary judgment on this claim is denied.

## II.  Failure to Warn Claim

Plaintiffs also assert that the Textron Defendants had a duty to warn them of hazards with the Vehicle and that the Textron Defendants breached this duty.  Specifically, Plaintiffs contend that the Textron Defendants should have warned Plaintiffs not to let a minor child drive the Vehicle and that the Textron Defendants should have warned them about the potential hazard of unintended acceleration.

Under Georgia law, "the *manufacturer* of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger." *Chrysler Corp. v. Batten*, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994) (emphasis added) (internal quotation marks omitted).  "In

14

failure to warn cases, the duty to warn arises whenever the *manufacturer* knows or reasonably should know of the danger arising from the use of its product." *Id.* (emphasis added). This duty is "a continuing duty upon *manufacturers* to warn of a danger arising from a product after its sale or distribution." *Reese*, 300 Ga. App. at 85, 684 S.E.2d at 284 (emphasis added). "A negligent failure to warn claim may arise 'from a manufacturer's post-sale knowledge acquired months, years, or even decades after the date of the first sale of the product.'" *Hunter v. Werner Co.*, 258 Ga. App. 379, 383, 574 S.E.2d 426, 431 (2002) (quoting *Batten*, 264 Ga. at 724, 450 S.E.2d at 211).

This duty to warn imposed upon product manufacturers has been extended to include product distributors and sellers. A product distributor who has actual or constructive knowledge of a danger that the manufacturer did not warn about has a duty to warn about that danger "at the time of sale and delivery." *Farmer v. Brannan Auto Parts, Inc.*, 231 Ga. App. 353, 354, 498 S.E.2d 583, 585 (1998) (internal quotation marks omitted); *accord Coosa Valley Tech. Coll. v. West*, 299 Ga. App. 171, 178, 682 S.E.2d 187, 193 (2009) (stating that Georgia law imposes "a duty on product manufacturers and sellers to warn consumers about dangers associated with their products" but finding that parties "who neither sold nor

manufactured" the product had no such duty absent evidence they assumed such a duty).

Significantly, the Textron Defendants neither manufactured nor sold the Vehicle in question. Plaintiffs have cited no authority for the proposition that a party who neither manufactured nor sold a product has a duty to warn of dangers associated with the product. Plaintiffs make a novel argument that this duty arises in this case because Defendants continued the manufacture of these vehicles upon the purchase of BBE's assets and because they assumed responsibility for the recalls. The Court finds Plaintiffs' argument unsupported by any legal authority and unpersuasive.

First, Plaintiffs contend that by taking over manufacturing operations for *new* Bad Boy Buggies vehicles in 2010, the Textron Defendants assumed a duty to warn previous customers regarding hazards in the pre-Purchase Agreement vehicles that the Textron Defendants did not manufacture or sell. Plaintiffs seek to impose this open-ended liability upon the Textron Defendants for vehicles they never manufactured, never sold, and never assumed liability for in their purchase of BBE's assets. Moreover, Plaintiffs have failed to cite any authority in support of this proposition, and the Court has located none. The Court declines to adopt such an unsupported, novel, and far-reaching theory of

16

liability and concludes that it is unlikely the Georgia courts would do so.

Second, Plaintiffs contend that by assuming responsibility for product recalls, the Textron Defendants assumed a duty to warn of dangers associated with the product. In support of this argument, Plaintiffs point the Court to *Hamby v. DaimlerChrysler Corp.*, Civil Action No. 1:03-CV-0937-CAP, 2006 WL 5334599 (Feb. 14, 2006). In that case, which is not binding precedent, the court noted that it had previously held that the plaintiff could not bring an independent claim for failure to recall but that the claim would be subsumed into the plaintiff's failure to warn claim. *Id.* at *1. Here, while Plaintiffs pointed to evidence that the Textron Defendants assumed a duty to recall with regard to 2008 Bad Boy Buggies vehicles, they did not point to evidence that the Textron Defendants assumed a duty to warn of hazards associated with vehicles that the Textron Defendants neither made nor sold, separate and apart from the duty to recall. While it is likely that some of the evidence relevant to a traditional failure to warn claim may overlap with Plaintiff's evidence supporting its failure to recall claim, the Court finds that the two claims are separate and distinct claims. Here, the Textron Defendants had no duty to warn of hazards associated with the Vehicle in question except to the extent

that such warnings were necessary to conduct the recall using ordinary and reasonable care.

For all of these reasons, the Court grants the Textron Defendants' motion for summary judgment on Plaintiffs' failure to warn claim.

CONCLUSION

As discussed above, the Textron Defendants' summary judgment motion (ECF No. 57) is granted as to Plaintiffs' defective design, defective manufacturing, and failure to warn claims.  The Textron Defendants' motion is denied as to Plaintiffs' failure to recall claim.  The Court also denies summary judgment as to Plaintiffs' claim for punitive damages at this stage in the litigation.


IT IS SO ORDERED, this 5th day of November, 2012.


s/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE