IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

MARK SILVER and LAURA SILVER,    *
Individually and as Next
Friends and Parents of Leslie    *
Erin Silver, a minor child,
                                 *
    Plaintiffs,                           CASE NO. 4:12-CV-5 (CDL)
                                 *
vs.
                                 *
BAD BOY ENTERPRISES LLC, BB
BUGGIES INC., and TEXTRON INC.,  *

    Defendants.                  *

_____

O R D E R

Leslie Erin ("Elle") Silver, a thirteen-year-old girl, was seriously injured while driving a 2008 Bad Boy Buggy Classic vehicle ("Vehicle") designed and manufactured by Defendant Bad Boy Enterprises LLC ("BBE"). Prior to the accident, BBE sold its business to Defendant BB Buggies Inc. ("BB Buggies") through an asset sale with the assumption of certain liabilities. As part of those transactions, BB Buggies and its parent company, and Defendant Textron Inc. ("Textron" and, together with BB Buggies, "Textron Defendants"), assumed responsibility for certain recalls related to BBE vehicles, including the Vehicle operated by Elle when she was injured.

Elle's parents, Plaintiffs Mark Silver ("Mr. Silver") and Laura Silver ("Mrs. Silver") (collectively, "Plaintiffs"),

brought this product liability action under Georgia law, asserting that the Vehicle was defectively designed because it would accelerate without any input from the driver ("unintended acceleration claim"), it had a propensity to roll over, and it was not crashworthy. Plaintiffs also allege that the Vehicle was defective because it did not have adequate warnings. Plaintiffs further contend that Defendants breached their continuing duty to warn of the risks of unintended acceleration and rollover, as well as their duty to warn that minors should not operate the Vehicle. Finally, Plaintiffs assert negligent recall claims, alleging that Defendants undertook a duty to recall the Vehicle but did not exercise reasonable care in conducting the recall programs.

BBE filed a Motion for Partial Summary Judgment (ECF No. 89), seeking summary judgment as to all of Plaintiffs' claims except Plaintiffs' crashworthiness design defect claim. The Textron Defendants moved for summary judgment on the only claim against them, the negligent recall claim (ECF No. 92). Plaintiffs have abandoned their manufacturing defect claim and their design defect claim based on the Vehicle's propensity to roll over. Therefore, BBE's motion for summary judgment is granted as to those claims. The Court finds that genuine factual disputes exist regarding Plaintiffs' remaining claims against BBE, and BBE's motion is denied as to those claims. The

Court finds that genuine factual disputes exist regarding Plaintiffs' negligent recall claims against the Textron Defendants, and therefore, the Textron Defendants' motion for summary judgment is also denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following.

**I.  Bad Boy Classic Model**

At the time of her accident, the Plaintiffs' minor daughter was operating a 2008 Bad Boy Buggy Classic model vehicle designed and manufactured by BBE. This Vehicle is an electric

4-wheel drive vehicle built on a golf cart chassis.  The Bad Boy Classic model was designed so that it could be used in an off-road environment, and it was marketed predominately to hunters and outdoorsmen.  After BBE manufactured the Vehicle but before the crash that gave rise to this action, BB Buggies agreed to purchase selected assets and liabilities from BBE.  The purchase agreement was consummated on October 22, 2010.  After the purchase agreement, BB Buggies took over the manufacturing operations for Bad Boy Buggy vehicles, and BBE dissolved.[1]

## II.  The Vehicle and the Crash

The Vehicle involved in the accident giving rise to this action was manufactured on September 25, 2008 by BBE and sold directly to Jimmy Hardin ("Hardin"), a friend of Plaintiffs, on October 7, 2008.  After Hardin purchased the vehicle, Mr. Silver traveled to BBE's facility in Mississippi to pick up the Vehicle along with three other vehicles that Mr. Hardin had purchased. Mr. Silver took delivery of the four vehicles and the accessories.  Although the vehicles came with documentation on "how to hook up the charger," Mr. Silver did not receive any owner's manuals.  M. Silver Dep. 48:9-49:16, ECF No. 90-6.

---

[1] Textron is the parent corporation of BB Buggies.  The Court previously concluded that there is a genuine fact dispute as to whether Textron and/or BB Buggies undertook a duty to conduct a recall program related to 2008 Bad Boy Buggy Classic Model vehicles.  *Silver v. Bad Boy Enters. LLC*, 907 F. Supp. 2d 1351, 1357 (M.D. Ga. 2012.)

Hardin stored the Vehicle at the property of Mrs. Silver's aunt and uncle.  Mr. Silver taught Elle how to drive the Vehicle.  She was first allowed to drive it when she was eleven or twelve.  On September 17, 2011, Mrs. Silver gave Elle permission to operate the Vehicle.  Elle was thirteen years old at the time.  Mrs. Silver stayed inside the house and did not watch Elle drive the Vehicle with Elle's friend, Brittany Peacock ("Brittany"), and Elle's little sister Dixie.  L. Silver Dep. 73:18-74:10, ECF No. 90-5.  Elle and Brittany each drove the Vehicle around a looping gravel driveway in front of the house (the "Loop") several times.  While Brittany was driving the Vehicle, she noticed that the Vehicle would, at times, "go fast as if I had like pressed harder [on the accelerator]" even though she was keeping "stable pressure" on the accelerator. Peacock Dep. 34:11-25, ECF No. 90-8.  And when Elle was driving the vehicle, she noticed that the Vehicle was "accelerating faster than what [her] foot was pushing on the pedal" as she approached a curve in the Loop, and she felt the Vehicle "kind of surge forward."  E. Silver Dep. 78:5-17, 86:12-22, ECF No. 90-7.  Brittany, who was a passenger at that time, also felt the Vehicle surge as they approached the curve.  Peacock Dep. 45:2-13.  Elle took her foot off the gas and applied the brake, and the Vehicle slowed down "a little."  E. Silver Dep. 78:25-79:12.  Then the Vehicle started tilting, and Elle stuck her left leg

out of the Vehicle.   The Vehicle tipped over and came to rest on the driver's side.   When the Vehicle landed on the ground, the Vehicle was traveling between ten and thirteen miles per hour. *Compare* Breen Dep. 116:10-17, ECF 90-9 (stating that the Vehicle hit the ground "at a speed of twelve, thirteen mile an hour range") *with* Wilson Dep. 138:15-139:5, ECF 90-10 (stating that the Vehicle landed at a speed of ten miles per hour).   As a result of the crash, Elle's left foot and part of her left leg were severed.

## III. Unintended Acceleration

Plaintiffs contend that the Vehicle had an intermittent open circuit in its electrical system that caused unintended acceleration.   It is undisputed that unintended acceleration is a serious problem that can lead to injuries.   It is also undisputed that an open circuit can lead to unintended acceleration.   Defendants deny that there was an intermittent open circuit in the Vehicle because Plaintiffs' expert did not find any physical evidence of one.   Specifically, Plaintiffs' expert did not find any evidence of a cut wire or loose, frayed, or exposed wiring in the parts of the Vehicle's wiring that could be examined.   Plaintiffs' expert also did not find any other physical evidence of an intermittent open circuit that led to unintended acceleration in the Vehicle.   Nonetheless, Plaintiffs' expert testified: "These types of things do not

always leave behind physical evidence.  I have found a number of possibilities that shouldn't be there that would" cause the surging that Elle and Brittany described.  Donahue Dep. 162:9-21, ECF No. 95-1 at 540.  Plaintiffs' expert opined that if the testimony of Elle and Brittany regarding the surge is believed, then the surge of the Vehicle was caused by an intermittent open circuit, which would not necessarily leave physical evidence. *Id.* at 137:19-142:7, ECF No. 95-1 at 533-35.  Plaintiffs' expert further opined that it would be possible to eliminate the design flaws in the Vehicle by using an electronic throttle control found in most automobiles.  *Id.* at 195:3-196:7, ECF No. 95-1 at 548.  The accelerator pedal on later model Bad Boy Buggy vehicles, which was also used as part of a 2010 recall, is similar to what is used in automobiles.[2]

## IV.  Vehicle Warnings

BBE developed a document entitled "Important Information." At some point, Hardin received the "Important Information" document, which BBE contends is the Owner's Manual for the Vehicle.  Hardin Dep. 63:11-14, 64:21-25, 67:17-25, ECF No. 90-4.  Mr. Silver asserts that he did not receive the document when

---

[2] Plaintiffs' expert also opined that the location of the accelerator pedal on the Vehicle exposed it to potential immersion in water, which could cause unintended acceleration.  Plaintiffs' expert further opined that it would be a safer alternative design to relocate the pedal to prevent exposure to water and dirt.  Defendants point out that Plaintiffs' expert did not find any physical evidence that water played a factor in the crash of the Vehicle.  Donahue Dep. 102:17-103:24.

he picked up the Vehicle, and Hardin does not recall how he received the document. *Id.* at 54:20-55:7. It is undisputed that Hardin did not give the "Important Information" document to Mr. Silver. It is also undisputed that Hardin, Mr. Silver, and Elle did not read the "Important Information" document.

In large, bold, underlined print, the Limited Warranty page of the "Important Information" document states, "The Buggy should never be operated by persons 18 years of age or under." Def. BBE's Statement of Facts Ex. L, Important Information at Silver-Hardin-011, ECF No. 90-12 at 3. The warranty authorization portion of the "Important Information" document asks the owner to "acknowledge that the Buggy should never be operated by a person 18 years or younger." *Id.* at Silver-Hardin-24, ECF No. 90-12 at 16.

The Vehicle had a warning label in the center of its dashboard. Mr. Silver read the warning label when he picked up the Vehicle. The label states that the Vehicle should "be operated only by authorized drivers." Def. BBE's Statement of Facts Ex. T, Vehicle Label at Silver-PL-1269, ECF No. 90-20 at 4. The label further states: "Keep entire body inside vehicle and hold on when vehicle is in motion." *Id.* The label does not explicitly state that the Vehicle should not be operated by a minor. Mr. Silver testified that if the Vehicle's label had stated that a person under the age of eighteen should not

operate the Vehicle, then he would not have let Elle drive the Vehicle.  M. Silver Dep. 78:8-20.

Neither the "Important Information" document nor the warning label on the Vehicle warned of a risk of sudden unintended acceleration or rollover.

## V.   Recalls of Bad Boy Buggy Vehicles

### A.   2008 Recall

In early 2008, BBE conducted a recall to address unintended acceleration issues in Bad Boy Buggy vehicles ("2008 Recall"). BBE implemented two remedies during the 2008 Recall which were incorporated into all vehicles manufactured after June 2008. These design changes were included in the Vehicle involved in this action.

### B.   2009 Recall

In 2009, BBE continued to receive reports of unintended acceleration in Bad Boy Buggy Classic model vehicles.  BBE concluded that the problem was voltage spikes that caused pedal circuitry burnout.  BBE also decided that the installation of a part called the Zerner Diode would reduce the potential for unintended acceleration due to voltage spikes and pedal circuitry burnout.  Therefore, in 2009, BBE proposed a recall of 2008 Bad Boy Buggies Classic vehicles to install the Zerner Diodes ("2009 Recall").  BBE sought permission from the Consumer Product Safety Commission ("CPSC") to initiate "fast-track"

treatment of the 2009 Recall.  The CPSC granted permission for fast-track treatment, and the 2009 Recall began in October 2009. As part of the corrective action plan, BBE agreed to disseminate notice of the recall by, among other things, sending letters to dealers and some consumers.

Hardin did not receive notice of the 2009 Recall.  But even if he had received notice, it is doubtful that the recall would have fixed the design defect alleged by Plaintiffs in this action because it does not appear that the Vehicle experienced pedal circuitry burnout that would have been prevented by installation of the Zerner Diodes.

C.   2010 Recall

In 2010, BBE determined that it should revise the remedy provided during the 2009 Recall by replacing the accelerator pedal assembly, changing the location of the accelerator pedal, and installing a new wiring harness ("2010 Recall").  BB Buggies administered the 2010 Recall.  Part of the corrective action plan included sending a letter regarding the 2010 Recall to all known owners of Bad Boy Buggy Classic vehicles.  The corrective action plan also included press releases and letters to Bad Boy Buggy vehicle dealers.  Hardin did not receive a copy of the 2010 Recall Notice.

During the acquisition process, BBE gave BB Buggies documents regarding the Bad Boy Buggy product line.  Although

BBE had a system to track vehicle identification numbers of Bad Boy Buggy vehicles, BBE's files did not include any warranty registration information for the Vehicle or another immediately obvious way to connect the Vehicle to Hardin. The documents produced by BBE to BB Buggies did include a database of accounting entries in a QuickBooks software program. The database did not provide a complete list of vehicle owners, but BB Buggies did attempt to search the database for documents that included vehicle identification numbers. The search did not reveal any owner information for the Vehicle.

After Plaintiffs commenced this action, the Textron Defendants became aware that the QuickBooks database contained an invoice for the sale of goods from BBE to Phenix Foods, which was Hardin's business. Miller Aff. Ex. D, Invoice, ECF No. 92-6. Though the invoice does not contain any vehicle identification numbers, it does list several products: three Item Code BR1 – Bad Boy Realtree at a price of $5,000 each, one Item Code BR1 – Bad Boy Realtree at a price of $0, four Item Code 40085 – Dual Pro Automatic Charger, and four Item Code 50425 – Windshield.[3]

---

[3] One of the color options for Bad Boy Buggy vehicles was a Realtree camouflage pattern.

DISCUSSION

**I.  Claims Against BBE**

Plaintiffs asserted claims against BBE for manufacturing defect, failure to warn, and negligent recall. Plaintiffs also asserted design defect claims based on the Vehicle's crashworthiness, unintended acceleration, and propensity to roll over. Plaintiffs have abandoned their manufacturing defect claim and their design defect claim based on the Vehicle's propensity to roll over. Therefore, the Court grants BBE's summary judgment motion as to those claims. BBE did not move for summary judgment on the crashworthiness claim. The remaining issues for the Court to decide are whether genuine fact disputes exist on Plaintiffs' claims for (1) design defect based on unintended acceleration, (2) failure to warn, and (3) negligent recall.

A.  Design Defect – Unintended Acceleration

BBE contends that Plaintiffs have no evidence to support their claim that the Vehicle has a design defect that led to a risk of unintended acceleration. Both Elle and Brittany testified that while they were driving the Vehicle, it surged forward as if they were putting more pressure on the accelerator than they actually were. They also testified that they felt a surge as they entered the curve just before the crash. Based on this testimony, a reasonable juror could conclude that the

Vehicle suddenly and unexpectedly accelerated just before the crash. Plaintiffs' expert testified that if the girls' testimony is believed and the Vehicle did surge despite stable pressure on the accelerator, then an intermittent open circuit that existed due to a design flaw in the Vehicle's electrical system caused the surge. Plaintiffs' expert further testified that an intermittent open circuit would not necessarily leave physical evidence. Therefore, although Defendants insist that physical evidence is required to establish an intermittent open circuit, the Court concludes that there is a fact question on this issue.

BBE further asserts that Plaintiffs cannot establish that "a non-existent defect" was a cause of the crash because BBE's expert opined that Elle's actions, including "negotiating a sharp turn" and "erratic driver inputs," caused the crash. Def. BBE's Mot. for Partial Summ. J. 10-11, ECF No. 91. As discussed above, there is a genuine fact dispute as to whether the Vehicle had a defect that caused unintended acceleration. There is also evidence that the Vehicle surged just before Elle entered the curve. A reasonable juror could therefore conclude that a design defect caused a surge that led to the crash. For all of

these reasons, BBE is not entitled to summary judgment on Plaintiffs' unintended acceleration design defect claim.[4]

B.   Failure to Warn

Plaintiffs allege two separate failure to warn claims. First, they contend that the Vehicle's warning label should have warned that minor children should not be permitted to operate the Vehicle.   Second, they contend that Defendants failed to warn about the risks of unintended acceleration and rollover, which they had a continuing duty to warn about given information they received about these hazards.[5]   BBE argues that Plaintiffs' failure to warn claim regarding children operating the Vehicle fails as a matter of law because neither Mr. Silver nor Elle read the "Important Information" document.   In general, "where a plaintiff does not read an allegedly inadequate warning, the adequacy of the warning's contents cannot be a proximate cause of the plaintiff's injuries." *Camden Oil Co., LLC v. Jackson*, 270 Ga. App. 837, 840, 609 S.E.2d 356, 358 (2004).   Plaintiffs' claims, however, are not based solely on an allegedly inadequate

---

[4] After filing its motion for summary judgment, BBE filed a *Daubert* motion to exclude the testimony of Plaintiffs' design defect expert. That motion is not yet ripe, and BBE did not rely on it in support of its summary judgment motion.   The Court will rule on that motion prior to trial, and if it is granted will reconsider today's ruling.

[5] BBE did not address Plaintiff's failure to warn of unintended acceleration and rollover claims in its summary judgment brief or its reply brief.   The Court declines to create arguments for the parties. Because BBE did not move for summary judgment on Plaintiffs' failure to warn claims based on unintended acceleration and rollover, BBE is not entitled to summary judgment on those claims.

warning in the "Important Information" document.   Rather, they are based in part on BBE's failure to place clear warnings on the Vehicle's warning label.   A manufacturer breaches its duty to warn by "failing to adequately communicate the warning to the ultimate user."   *Id.*, 609 S.E.2d at 359 (internal quotation marks omitted).   "It is a jury question whether or not the manufacturer was negligent in failing to place a warning in such position, color and size print or to use symbols which would call the user's attention to the warning or cause the user to be more likely to read the label and warning than not."   *Id.* at 841, 609 S.E.2d at 359 (internal quotation marks omitted).

Although it is undisputed that BBE warned in its "Important Information" document that children should not operate the Vehicle, there is a factual dispute regarding whether Mr. Silver had an opportunity to review the "Important Information" document.   Moreover, Plaintiffs contend that the warning should have been placed on the Vehicle itself, not just in the "Important Information" document.   While BBE points out that the Vehicle's label does state that the Vehicle should only be operated by "authorized drivers," the label does not state that children should not be authorized to drive the Vehicle.   For these reasons, the Court finds that a factual dispute exists on the question whether the age-related warning was adequately communicated to Plaintiffs.

There is also a factual dispute on causation.  Mr. Silver testified that if the Vehicle's warning label had stated that the Vehicle should not be operated by persons under the age of eighteen, then he would not have let Elle drive the Vehicle.  If the jury believes Mr. Silver, then it could conclude that BBE's failure to place the warning directly on the Vehicle caused Elle's injuries.  Accordingly, BBE is not entitled to summary judgment on Plaintiffs' failure to warn claim.

C.   Negligent Recall[6]

Plaintiffs' negligent recall claims against BBE relate to the 2009 Recall.  BBE appears to contend that the 2009 Recall was reasonable as a matter of law because the corrective action plan was approved by the CPSC and there is no evidence that BBE deviated from that plan, even though Hardin did not receive a recall notice.  BBE also contends that Plaintiffs' negligent recall claim fails because there is no evidence that the Vehicle

---

[6] BBE claims that Plaintiffs did not assert a "negligent recall" claim and that Plaintiffs only asserted a "failure to recall" claim.  A "failure to recall" claim is not cognizable under Georgia law. *Silver*, 907 F. Supp. 2d at 1356 ("Georgia law generally imposes no duty upon a manufacturer to recall a product after the product has left the control of the manufacturer.") (citing *Ford Motor Co. v. Reese,* 300 Ga. App. 82, 85, 684 S.E.2d 279, 283–84 (2009)).  A negligent recall claim is, however, actionable under Georgia law. *Id.* at 1356-57 ("'[I]f a manufacturer chooses to recall a product voluntarily, Georgia law imposes a duty upon the manufacturer to exercise ordinary care in conducting the recall campaign.'") (quoting *Reese* 300 Ga. App. at 85 n.2, 684 S.E.2d at 283 n.2).  In their Complaint, Plaintiffs alleged that "Defendants could have recalled the subject Bad Boy Buggy like it did other Bad Boy Buggies" but that Defendants failed to do so.  Compl. ¶¶ 31-32.  Based on these allegations, the Court is satisfied that Plaintiffs alleged negligent recall in the Complaint.

had any pedal circuitry burnout issues that would have been remedied by the fix applied during the 2009 Recall—installation of the Zerner Diodes.

"[I]f a manufacturer chooses to recall a product voluntarily, Georgia law imposes a duty upon the manufacturer to exercise ordinary care in conducting the recall campaign." *Reese,* 300 Ga. App. at 85 n.2, 684 S.E.2d 283 n.2. Hardin did not receive a notice regarding the 2009 Recall, and BBE does not offer any excuse for failing to notify Hardin of the 2009 Recall. Rather, BBE's argument focuses on causation: even if Hardin had received the recall notice and taken the Vehicle to be fixed, the fix applied during the 2009 Recall would not have prevented the crash here because the Vehicle's alleged unintended acceleration problem was not caused by the absence of Zerner Diodes. Therefore, according to BBE, even if Hardin had received notice regarding the 2009 Recall, it would not have made a difference. Plaintiffs contend, however, that if Hardin had gotten notice of the recall, he would have told Mr. Silver about it and Mr. Silver would not have let Elle operate the Vehicle. Moreover, Plaintiffs assert that BBE did not adequately design the 2009 Recall to address the unintended acceleration issues present in the Vehicle because BBE crafted a solution that only addressed one potential cause of unintended acceleration but did not address other potential causes of which

17

BBE knew or should have known.  Specifically, Plaintiffs maintain that the 2009 Recall could have and should have included the fixes implemented in 2010: relocation of the pedal and an overhaul of the throttle system.  Based on the present record, the Court concludes that a genuine fact dispute exists on whether BBE's failure to send Hardin the 2009 recall notice caused Plaintiffs' injuries.[7]

---

[7] It is undisputed that Georgia recognizes a negligent recall claim based on the manner in which notice is provided.  *See Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 199, 375 S.E.2d 117, 120-21 (1988) (finding jury question on negligent recall claim where there was evidence that dealer offered to distribute recall information but never mailed recall notices to its customers).  The Court knows of no reason why the Georgia courts would conclude that a manufacturer who voluntarily initiates a recall to correct a dangerous hazard involving its product would not have a duty to exercise ordinary care in devising a remedy for the hazard.  *See Ontario Sewing Mach. Co. v. Smith*, 275 Ga. 683, 687, 572 S.E.2d 533, 536 (2002) (finding a jury question on the reasonableness of a recall remedy because of its time constraint and the cost imposed on the purchaser).

Plaintiffs' negligent recall claim is based on BBE's failure to provide Hardin with notice of the recall.  Plaintiffs are not asserting a separate claim based on the lack of reasonableness of the remedy.  Nonetheless, the reasonableness of the remedy is relevant to causation because BBE argues that its recall remedy would not have fixed the problem.  The Court finds that causation can be established if Plaintiffs prove that notice of the recall would have resulted in a correction of the hazardous condition by a non-negligent manufacturer.  To hold otherwise would mean that a manufacturer who negligently fails to notify consumers of a recall can escape liability if its recall remedy negligently failed to fix the problem.  This would also mean that someone who was notified of the recall and brought the product in for the "recall fix" may have a claim if the fix was negligently made, but the person who was not notified of the recall would have no claim even though the person continued to be exposed to the known hazardous condition because of the manufacturer's negligent conduct.  Such an argument and the accompanying absurd results are inconsistent with Georgia's recognition of a cause of action against a manufacturer who initiates a recall but fails to implement it in a non-negligent manner.

BBE further asserts that any negligence with regard to sending the recall notices did not cause Plaintiffs' injuries because those

18

## II.  Claim Against Textron Defendants

Plaintiffs contend that the Textron Defendants undertook a duty to conduct a recall program related to the 2008 Bad Boy Buggy Classic vehicles.  Plaintiffs further assert that the Textron Defendants failed to exercise ordinary care in conducting the recall program.  The Court previously found that genuine fact disputes existed on these issues.  *Silver*, 907 F. Supp. 2d at 1357.  The parties conducted additional discovery, and the Textron Defendants now contend that they were not negligent with regard to the recall program and that Plaintiffs cannot point to evidence to create a genuine fact dispute on this claim.

Apparently, the files BBE gave to BB Buggies in connection with the acquisition did not contain any reference to the Vehicle by vehicle identification number, so BB Buggies did not

_____

recalls did not relate to the precise components that were addressed in the recalls.  The cases cited by BBE in support of this argument stand for the unremarkable proposition that a negligent recall claim requires proof that a defect in the recall program caused the plaintiff's injury.  In other words, a plaintiff must prove that the product that injured him suffered from the defect addressed by the negligent recall.  *See Harley-Davidson Motor Co., Inc. v. Daniel*, 244 Ga. 284, 286, 260 S.E.2d 20, 22-23 (1979) (finding that recall to address rear brake piston seal was relevant to plaintiff's claim regarding faulty piston seal); *see also Bailey v. Monaco Coach Corp.*, 350 F.Supp.2d 1036, 1045 (N.D. Ga. 2004) (concluding that recall to address overheating defect in brakes was not relevant where plaintiff's claim was simply that the brakes squealed and there was no proof that plaintiffs' brakes had an overheating problem).  Here, the recall notices were intended to address the defect of unintended acceleration.  Plaintiffs pointed to evidence that their injuries were caused by unintended acceleration of the Vehicle.  Therefore, the unintended acceleration recall notices are relevant in this action.

find the Vehicle in its search for documents that was based solely on vehicle identification numbers. Based on the absence of this documentation in the BBE files, the Textron Defendants appear to contend that their document search was reasonable as a matter of law and that no reasonable juror could conclude otherwise. There is, however, evidence that the Textron Defendants received financial documents, including an invoice for three Item Code BR1 – Bad Boy Realtrees sold to Phenix Foods for a total of $15,000. While a juror could conclude that it was reasonable for Textron to overlook this document that was allegedly buried in its files, a juror could also conclude that the codes and product description on the invoice suggest that the invoice reflects a sale of Bad Boy Buggy vehicles and that a recall notice should have been sent to the address on the invoice. Therefore, the Court finds that judgment as a matter of law is not warranted at this time based on the current record.

CONCLUSION

As discussed above, the Textron Defendants' Motion for Summary Judgment (ECF No. 92) is denied. BBE's Motion for Partial Summary Judgment (ECF No. 89) is granted as to the following claims: manufacturing defect claim and design defect claim based on the Vehicle's propensity to roll over. Plaintiffs' design defect claim against BBE based on the

Vehicle's crashworthiness remains pending, as do Plaintiffs'
design defect claim based on unintended acceleration,
Plaintiffs' failure to warn claim, and Plaintiffs' failure to
recall claim.

IT IS SO ORDERED, this 20th day of August, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE