IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

MARK SILVER and LAURA SILVER,   *
Individually and as Next
Friends and Parents of Leslie   *
Erin Silver, a minor child,
   *
    Plaintiffs,                 CASE NO. 4:12-CV-5 (CDL)
   *
vs.
   *
BAD BOY ENTERPRISES LLC, BB
BUGGIES INC., and TEXTRON INC.,  *
    Defendants.          *

_____

O R D E R

    Leslie Erin ("Elle") Silver was seriously injured while driving a 2008 Bad Boy Buggy Classic vehicle ("Vehicle") designed and manufactured by Defendant Bad Boy Enterprises LLC ("BBE"). Her parents, Plaintiffs Mark and Laura Silver, brought this product liability action, which is scheduled for trial later this year. At the pretrial conference, the Court deferred ruling on several motions to allow the parties additional time to brief the issues. The briefing is now complete. In addition, Defendants BB Buggies, Inc. and Textron, Inc. (together, "Textron Defendants") filed a motion for reconsideration of the Court's summary judgment order. As discussed below, the Court makes the following rulings. BBE's motion to limit the testimony of R. Patrick Donahue (ECF No.

108) is denied.  BBE's motion to limit the testimony of Lawrence A. Wilson (ECF No. 109) is granted in part and denied in part. BBE's motion to limit the testimony of Paul R. Lewis (ECF No. 111) is denied.  Plaintiffs' motion to strike those motions as untimely (ECF No. 112) is denied.  BBE's motion to exclude prior vehicle models (ECF No. 135) is granted.  BBE's motion to exclude dissimilar vehicles (ECF No. 137) is granted in part and denied in part.  BBE's motion to exclude other incidents (ECF No. 138) is granted in part and denied in part.  BBE's objections to Plaintiffs' proposed trial exhibits (ECF No. 150) are sustained as discussed in more detail below.  The Textron Defendants' Motion for Reconsideration (ECF No. 164) is denied.

DISCUSSION

## I.    BBE's Motions to Exclude Plaintiffs' Experts

An expert witness may offer opinion testimony if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  To offer opinion testimony, a proffered expert must be qualified to render a reliable opinion based on sufficient facts or data and the application of accepted methodologies. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).  The Court must act as "gatekeeper to keep out irrelevant or unreliable expert

2

testimony." *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citing *Kumho Tire Co.*, 526 U.S. at 145; *Daubert*, 509 U.S. at 596). "This gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (internal quotation marks omitted). "In evaluating the reliability of scientific expert testimony, a district court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue." *Id.* (internal quotation marks omitted). With these principles in mind, the Court will evaluate BBE's objections to Plaintiffs' experts.

A.   Motion to Exclude Testimony of R. Patrick Donahue

R. Patrick Donahue is Plaintiffs' expert on unintended acceleration of the Vehicle. Elle and her friend, Brittany Peacock, testified that they experienced an unexpected surge immediately before the Vehicle crashed and caused Elle's injuries. Donahue did not find any physical evidence of an open circuit or an intermittent open circuit in the Vehicle's electrical system that could cause unintended acceleration. But Donahue opined that if the testimony of Elle and Brittany

regarding the surge is believed, then the surge of the Vehicle was caused by an intermittent open circuit, which would not necessarily leave physical evidence.

BBE objects to Donahue's testimony on two main grounds. First, BBE contends that Donahue is not qualified to testify about electric vehicles. Second, BBE argues that Donahue's methodology is unreliable and that his testimony will not assist the jury. The Court will address each argument in turn.

Donahue is a licensed professional electrical engineer. During his eighteen-year career at General Motors, Donahue specialized in the design, analysis, testing, and troubleshooting of vehicle electrical systems. BBE contends that Donahue is not qualified to opine about an electric vehicle such as the one at issue here because Donahue's work experience focused on electrical control systems used in gas-powered vehicles and did not include work on the design of any vehicle propelled by an electric motor. BBE cannot seriously dispute that Donahue completed extensive training on electric circuits, digital systems, control systems, electric fields, and electric machines. BBE also cannot seriously dispute that Donahue has significant experience working with vehicle electric systems and controls. According to Donahue, the motor that propels the Vehicle is a larger version of the electric motors he worked on throughout his career, and the electrical control system at the

heart of Donahue's analysis has the same basic characteristics as electrical control systems found in other vehicles. Based on Donahue's education, training, and experience, the Court is satisfied that Donahue is qualified to testify about the Vehicle's electrical control system.

The next question is whether Donahue's methodology is sufficiently reliable. Donahue inspected the Vehicle and tested an exemplar vehicle. He also reviewed the testimony and documents in this case. Again, both Elle and Brittany Peacock testified that they experienced an unexpected surge immediately before the Vehicle crashed and caused Elle's injuries. Donahue found no physical evidence in the Vehicle of an intermittent open circuit that could have caused the unintended acceleration. But Donahue's "breakout box" testing revealed several "failure modes" that could cause unintended acceleration due to an intermittent open circuit without leaving physical evidence in the parts of the Vehicle that could be examined. According to Donahue, the test for an open circuit is very basic, and BBE does not argue that Donahue's "breakout box" testing was flawed. Rather, BBE insists that it is simply not possible for an intermittent open circuit to occur without leaving physical evidence. But Donahue pointed to at least two reasons why an intermittent open circuit could occur without leaving physical evidence in the parts of the Vehicle that could be examined:

poor insulation of the wiring and water intrusion.  BBE may certainly cross-examine Donahue regarding these theories, but the Court finds that a jury should weigh the conflicting evidence.  BBE's motion to exclude Donahue's testimony is denied.

B.   Motion to Exclude Testimony of Lawrence A. Wilson

Lawrence A. Wilson is Plaintiffs' expert on accident reconstruction and occupant retention design.  BBE does not appear to challenge Wilson's accident reconstruction and occupant retention design testimony.  BBE asserts that Wilson also intends to offer opinions regarding unintended acceleration, the Vehicle's stability, the Vehicle's warnings, and the recalls conducted by Defendants.  According to BBE, Wilson is not qualified to offer an opinion on these topics.

Wilson is a licensed professional mechanical engineer.  He is currently pursuing a graduate degree in biomedical engineering.  Wilson has completed extensive coursework in the field of accident reconstruction.  Wilson has more than twenty years of experience investigating and reconstructing vehicle accidents.  He has consulted on the development of a graduate level course in vehicle handling and accident reconstruction, and he has authored papers and presented seminars regarding accident reconstruction.

Wilson does not intend to testify regarding the cause of unintended acceleration, and he does not intend to opine that the Vehicle was defective due to an unintended acceleration problem. Rather, Wilson intends to testify that based on his inspection of the scene, his inspection of the Vehicle, his reconstruction of the accident, the testimony of witnesses, and the documents, sudden unintended acceleration was the most likely cause of the crash. If the jury believes the testimony of Elle and Brittany and the testimony of Donahue, then the jury can conclude that the Vehicle had an unintended acceleration problem. Wilson's testimony is about causation; if Elle, Brittany, and Donahue are believed, then Wilson opines that the most likely cause of the crash is sudden unintended acceleration, which is consistent with Wilson's reconstruction of the crash. The Court finds that Wilson may offer his opinion on causation.

Wilson also does not intend to opine that the Vehicle was defective due to a stability problem. Rather, he intends to testify that the Vehicle was defective because BBE did not provide adequate occupant containment devices even though BBE knew that the Vehicle had a propensity to roll over. Wilson tested the stability of an exemplar vehicle and reviewed BBE's documents regarding Bad Boy Classic vehicles, including the testimony of BBE's representative regarding the Vehicle's static

stability factor. Based on all of this evidence, Wilson concluded that the Vehicle had a propensity to roll over. Given that propensity, Wilson determined that BBE should have provided safeguards, such as doors or safety nets. The Court finds that Wilson may offer his opinion on occupant safety devices.

Wilson does intend to testify that BBE should have warned of the risks of unintended acceleration and rollover. Wilson does not intend to offer any opinion on the *content* of such warnings, but he contends that BBE should have provided some warning. Wilson's opinion is based on an engineer's "design hierarchy," which was developed by the National Safety Council and the U.S. Military. The design hierarchy requires that if a product's hazard cannot be "designed out" without altering the product's intended use and function, then the designer must guard against the hazard. And if the designer does not guard against the hazard, then the designer must provide a warning about the hazard. As discussed above, Wilson's primary contention is that BBE should have put safeguards on the Vehicle to protect occupants in the event of a rollover. Wilson also asserts that because BBE did not place occupant safeguards on the Vehicle, BBE should have warned of the risks of unintended acceleration and rollover. This opinion is in line with the

engineer's design hierarchy, and the Court finds that it is sufficiently reliable to be admitted.[1]

Wilson also intends to testify that BBE did not adequately conduct recalls of the Bad Boy Buggy Classic vehicles because (1) BBE conducted the first recall without notifying the Consumer Product Safety Commission ("CPSC") as it was required to do, and (2) BBE did not meet its obligations in contacting customers affected by the recall.  Plaintiffs did not point to any evidence that Wilson has knowledge, skill, experience, training, or education regarding CPSC notice requirements or proper recall techniques.  Nonetheless, Plaintiffs contend that Wilson may testify about the recall because he reviewed the CPSC Recall Handbook.  Wilson, however, did not reference the CPSC Recall Handbook in his expert report or his deposition.  Even if he had, there is no evidence that Wilson is qualified to testify about CPSC recall requirements.  Plaintiffs also assert that Wilson can testify about the adequacy of BBE's notice efforts because he reviewed documents regarding how many vehicles received the fix following the recall.  But Plaintiffs offered no evidence that Wilson is qualified to render an opinion regarding the adequacy of a recall effort based on the "fix"

---

[1] Much of BBE's objection focuses on the fact that Wilson is not qualified to offer an opinion regarding the *contents* of the warning. Again, Wilson does not intend to offer an opinion regarding the contents of the warning.

rate.  For all of these reasons, the Court concludes that Wilson may not offer an opinion on BBE's recall efforts.

In summary, Wilson may offer expert opinions on accident reconstruction and occupant retention design.  Wilson may also offer opinions regarding unintended acceleration and stability in the context of his occupant retention design theory. Finally, Wilson may offer an opinion regarding design hierarchy, including an opinion that some warning was required if occupant safeguards were not included on the Vehicle.  Wilson may not offer any expert testimony on BBE's recall efforts.

C.   Motion to Exclude Testimony of Paul R. Lewis

Paul Lewis is Plaintiffs' expert on biomechanics.  He is a biomedical engineer with expertise in biomechanics and crash dynamics.  He intends to testify that Elle's injuries were caused by a crashworthiness defect in the Vehicle.  BBE does not object to Lewis's qualifications or methodology.  Rather, BBE contends that Lewis simply intends to testify that if the Vehicle had a door, then Elle would not have stuck her foot out of the Vehicle and her foot would not have been crushed.  BBE asserts that this causation opinion is within the common knowledge of the jury, so no expert testimony is necessary. Plaintiffs assert that Lewis will testify about feasible alternative design and explain how the different alternative designs would have helped and would not have been too burdensome

10

to implement.   These topics are not within the common knowledge of the average juror, so the Court will permit Lewis to offer his causation opinion.

BBE also contends that Lewis will simply parrot the evidence without offering independent expert analysis. Specifically, BBE asserts that Lewis will summarize documents and witness testimony, such as Elle's medical records, the testimony about the crash, and testimony of BBE representatives regarding occupant safety devices.   The Court will not permit Lewis to testify about the specific medical treatment Elle received because Lewis is not seeking to be qualified as a medical expert.   The Court will, however, permit Lewis to reference Elle's medical records to explain how the alleged crashworthiness defect caused Elle's specific injury.   Lewis also may not simply parrot the witness testimony regarding the crash, but he may offer his opinion on occupant kinematics, which is based not only on witness testimony but on his examination of the crash site and his experience investigating other vehicle crashes.   Finally, Lewis may not simply repeat the testimony of BBE's representatives about the need for occupant safety devices, but he may offer an opinion regarding occupant safety devices if it is based on his own experience and observations.

BBE also objects to Lewis's testimony regarding the proper classification of the Vehicle.  Plaintiffs do not dispute that Lewis is not qualified to testify about the proper classification of the Vehicle.  But Lewis does not intend to offer an opinion on how the Vehicle should be classified.  Rather, he intends to testify that it does not matter how the Vehicle is classified when determining whether it should have had certain occupant safety devices.  Lewis compared the Vehicle to other side-by-side all-terrain vehicles that weigh more than 1,000 pounds, have the capability to tip over and eject an occupant at relatively low speeds (regardless of maximum speed capability), and have structures capable of crushing an occupant following a tip-over crash.  Based on his comparison, Lewis determined that it is appropriate to compare the Vehicle to other types of all-terrain vehicles, including recreational off-highway vehicles, for purposes of evaluating its safety measures.  The Court declines to exclude this testimony.  For all of these reasons, BBE's motion to exclude Lewis's testimony is denied.

## II.  BBE's Motion to Exclude Prior Vehicle Models

BBE manufactured the "Series Model" Bad Boy Classic vehicle from 2004 to 2007 and then began manufacturing the "SePex Model" in June 2007.  BBE modified certain features of the SePex Model in June 2008.  The Vehicle at issue here is a SePex Model that

was manufactured on September 25, 2008. BBE contends that vehicles manufactured prior to June 2008 are not substantially similar to the Vehicle and asks the Court to exclude evidence of all Bad Boy Buggies manufactured before June 2008.

"Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Hessen ex rel. Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990). Evidence of similar occurrences "is only admissible if conditions substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time." *Id.* at 649. "The 'substantially similar' predicate for the proof of similar accidents is defined . . . by the defect at issue. *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986). Other cases involving similar, but not necessarily identical, products can be admissible. *Id.* (finding that similar but not identical multi-piece tire wheel rim configurations were relevant and admissible and that district court improperly concluded that substantial similarity doctrine required exact same parts). "Any differences in the circumstances surrounding the[] occurrences go merely to the

weight to be given the evidence." *Id.; accord Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000) (finding that the district court did not abuse its discretion in admitting evidence of adverse incidents that were similar to—but not exactly the same as—the incident at issue because the incidents were relevant to notice of design issues with product).

Plaintiffs seek to introduce evidence of incidents involving pre-June 2008 Bad Boy Buggies for two reasons. First, they seek to introduce the evidence in support of their crashworthiness claim to show that BBE was aware that its vehicles did not provide adequate safeguards in the event of a tip-over crash. Second, Plaintiffs seek to introduce the evidence in support of their unintended acceleration claim to show that BBE was aware that its vehicles had a propensity to accelerate suddenly without input from the driver. Plaintiffs argue that the vehicles are substantially similar with regard to these two defects. Plaintiffs cited evidence in support of their assertion that both models have the same door opening size and shape, but they did not point to evidence in support of their assertion that both models travel at the same speed and have similar rollover propensity. Likewise, Plaintiffs did not cite evidence in support of their assertion that despite significant changes to the powertrain system from the Series

model to the SePex model, the two models are substantially similar in terms of their risk of unintended acceleration because neither model contained a dual sensor in the accelerator pedal system.   While Plaintiffs' arguments are superficially appealing, the Court cannot ignore the fact that Plaintiffs did not cite evidence of substantial similarity in their brief.   The Court cannot take Plaintiffs' word for it that the different models are substantially similar, and the Court declines to search the record for evidence that supports Plaintiffs' arguments.   Based on the present record, BBE's motion to exclude evidence of prior vehicle models is granted.   If Plaintiffs believe that the present record does support a finding that Series Model vehicles and pre-June 2008 SePex model vehicles are substantially similar to the Vehicle, Plaintiffs shall file a motion for reconsideration of this issue within seven days of today's Order with a specific citation to the record evidence supporting substantial similarity.

**III. BBE's Motion to Exclude Dissimilar Vehicles**

BBE asks the Court to exclude evidence of several gas-powered side-by-side all-terrain vehicles, including the Yamaha Rhino, the Honda Big Red, and the Gator XUV.   BBE offers several bases for excluding this evidence, and the Court addresses each argument in turn.

First, BBE contends that evidence of the 2007 Yamaha Rhino should be excluded. Plaintiffs seek to introduce evidence of the 2007 Yamaha Rhino in support of their alternative design theory. In 2007, Yamaha began placing doors on the Rhino to prevent foot injuries. It is undisputed that the Yamaha Rhino is classified as a recreational off-highway vehicle because it has a maximum speed of more than thirty miles per hour. It is also undisputed that the Bad Boy Buggy Classic model is not a recreational off-highway vehicle because its maximum speed is slower than thirty miles per hour. Plaintiffs' experts opine that recreational off-highway vehicles such as the Yamaha Rhino are sufficiently similar to the Bad Boy Buggy Classic vehicle for purposes of evaluating the Vehicle's occupant safety devices. That is because the Bad Boy Buggy Classic vehicle and the Yamaha Rhino are both side-by-side all-terrain vehicles with similar weights and physical dimensions that can roll or tip over at relatively low speeds. *See generally* Wilson Report, ECF No. 109-1; Lewis Dep. 22:18-23:10, ECF No. 148. Given Plaintiffs' evidence that the 2007 Yamaha is sufficiently similar to the Bad Boy Buggy Classic vehicle for purposes of evaluating the Vehicle's occupant safety devices, the Court agrees with Plaintiffs that evidence of the 2007 Yamaha Rhino is relevant to show that a safer design was technologically and economically feasible before the manufacture date of the

16

Vehicle.   Therefore, Plaintiffs will be permitted to introduce evidence regarding the 2007 Yamaha Rhino.

Second, BBE asks the Court to exclude evidence of recreational off-highway vehicles manufactured after the Vehicle's manufacture date, September 25, 2008.  Plaintiffs contend that evidence of occupant safety characteristics in other vehicles is relevant to establish a defect in the Vehicle. In support of this assertion, Plaintiffs cite *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1185 (7th Cir. 1992), in which the Seventh Circuit affirmed the district court's decision to admit evidence of accidents involving the defendant's product that occurred after the plaintiff's injury date.  *Ross*, however, stands for the proposition that subsequent adverse incidents involving the *exact same product* may be relevant to establish defect and causation.  *Id.   Ross* does not establish that subsequent incidents involving *different* products are relevant on these issues.  Plaintiffs may not introduce evidence of other vehicles manufactured after September 25, 2008 to establish defect or causation.

Plaintiffs also contend that the Court should permit them to introduce evidence of recreational off-highway vehicles, regardless of manufacture date, to demonstrate the principles behind "rollovers."  In support of this argument, Plaintiffs cite *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391 (11th Cir.

1997).  In *Heath*, the plaintiffs alleged that the defendant's vehicle had a higher propensity for rollovers than other vehicles, and the rollover rate of comparable vehicles was relevant to the plaintiffs' defect claim.  *Id.* at 1396-97.  The Eleventh Circuit concluded that it was not an abuse of discretion for the district court to admit evidence of rollovers of "pointedly dissimilar" vehicles because the "evidence was not offered to reenact the accident" at issue in the case but was offered "to explain how rollovers occur."  *Id.*  Here, the Vehicle tipped over onto its side, and the parties fiercely debate whether this "tip over" constitutes a "rollover."  The Court finds that it would be confusing to permit evidence of dissimilar vehicles to explain how "rollovers" occur and thus declines to permit such evidence.

Third, BBE asks that the Court exclude a 2011 report called "Vehicle Characteristics Measurements of Recreational Off-Highway Vehicles" because the vehicles referenced in that report are classified as recreational off-highway vehicles, while the Vehicle is not.  Plaintiffs did not respond to BBE's motion regarding the report or offer a reason why the report should be admitted.  The report will thus be excluded.

In summary, Plaintiffs will be permitted to introduce evidence of the 2007 Yamaha Rhino.  Plaintiffs will not be permitted to introduce evidence of recreational off-highway

vehicles manufactured after September 25, 2008, and they will not be permitted to introduce the April 2011 report entitled "Vehicle Characteristics Measurements of Recreational Off-Highway Vehicles."

## IV. BBE's Motion to Exclude Other Incidents

BBE asks the Court to exclude other incidents involving Bad Boy Buggy vehicles. Plaintiffs contend that the following other incidents are admissible: (1) Edwin Dear's unintended acceleration incidents with a 2008 Bad Boy Buggy, (2) Cody Smith's tip-over accident with a 2005 Bad Boy Buggy, (3) Gary Knight and Jared Stice's tip-over accident with a 2008 Bad Boy Buggy, and (4) BBE's unintended acceleration incident report charts.

As discussed above, "[e]vidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Hessen*, 915 F.2d at 650. Evidence of similar occurrences "is only admissible if conditions substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time." *Id.* at 649.

A.   Edwin Dear Incidents

Edwin Dear had a 2008 Bad Boy Buggy Classic model vehicle. He experienced unintended acceleration on several occasions. First, while Dear was working on the vehicle in his shop during the fall of 2008, the vehicle started on its own and ran into a refrigerator. The tires kept spinning until Dear turned off the key switch. Dear took the vehicle back to the dealer, and BBE reprogrammed it so that it was in compliance with the 2008 recall. In May 2009, Dear again experienced unintended acceleration, and he was able to stop the vehicle by turning off the key switch. Dear took the vehicle back to BBE, and BBE worked on it. In August 2009, Dear experienced a surge while he was driving his Bad Boy Buggy vehicle. He took it back to the dealership, and BBE had the vehicle in its shop until late October 2009, which is also when BBE issued the second recall. In the spring of 2010, Dear experienced another incident of unintended acceleration, and he reported the incident to BBE's president and a number of other BBE employees.

BBE contends that the incidents with Dear's vehicle are not sufficiently similar to the issues Elle experienced because (1) Dear experienced uncontrollable wheel spin but Elle was able to achieve deceleration by using the brake pedal and (2) Dear's vehicle did not tip over or injure him. Plaintiffs intend to introduce evidence of Dear's unintended acceleration experiences

to show (1) 2008 Bad Boy Buggy Classic vehicles had an unintended acceleration defect, (2) BBE was aware of unintended acceleration problems when it undertook its recalls, (3) the 2008 recall did not fix the unintended acceleration problem, and (3) the 2009 recall did not fix the unintended acceleration problem. Given that Elle and Dear both testified that they experienced an unintended "surge" with a 2008 Bad Boy Buggy Classic vehicle, the Court is satisfied that the conditions of their experiences are sufficiently similar for the evidence regarding Dear's vehicle to be admitted even though Dear did not suffer a tip-over accident or a traumatic injury.

B.   Cody Smith Incident

Cody Smith was injured when he was driving a 2005 Series Model Bad Boy Buggy. As discussed above, Plaintiffs did not point to sufficient evidence of substantial similarity between Series Model vehicles and the Vehicle at issue in this action. Therefore, Plaintiffs shall not be permitted to introduce evidence of Smith's accident. If Plaintiffs believe that the present record does support a finding that Series Model vehicles are substantially similar to the Vehicle, Plaintiffs shall file a motion for reconsideration of this issue within seven days of today's Order with a specific citation to the record evidence supporting substantial similarity.

C.   Gary Knight/Jared Stice Incident

In August 2008, Jared Stice was driving a 2008 Bad Boy Classic vehicle with Gary Knight as his passenger. The front end of the vehicle locked up as Stice made a turn. The vehicle tipped over onto its side. As the vehicle tipped over, Knight stuck out his leg. The vehicle fell on top of Knight's leg and broke it. BBE contends that the Knight/Stice accident is not sufficiently similar to Elle's crash because the events leading up to the tip-over were different: Plaintiffs contend that the Vehicle here tipped over due to unintended acceleration, while the Knight/Stice accident resulted after the front end of the vehicle locked up.

Plaintiffs intend to introduce evidence of the Knight/Stice incident to demonstrate that BBE was on notice of the need for occupant safety devices such as doors, netting, or seatbelts before the manufacture date of the Vehicle at issue here. Although the precise cause of the tip-over was not exactly the same in both cases, the Court is satisfied that the incidents are sufficiently similar, particularly given that Plaintiffs intend to introduce the Knight/Stice incident to establish notice of a potential crashworthiness defect prior to the manufacture date of the Vehicle.

D.   Other Unintended Acceleration Incidents

BBE objects to two exhibits proffered by Plaintiffs: P-115 and P-193.   Plaintiffs represent that both of these documents are BBE business records that summarize sudden unintended acceleration issues with Bad Boy Buggy vehicles.   Plaintiffs also contend that the charts may be introduced under Federal Rule of Evidence 1006, which relates to summaries of voluminous writings that cannot be conveniently examined in court.   Given that the charts are BBE's own business records, the Court declines to exclude them on hearsay grounds.   Therefore, the Court would permit Plaintiffs to introduce the charts at least to show notice of unintended acceleration issues, except for two problems.   First, the charts contain summaries of incidents that were, for the most part, reported to BBE after the Vehicle was manufactured and thus cannot be used to establish notice. Second, it is not possible to tell from the charts whether the vehicle was a Series model, a pre-June 2008 SePex model, or a post-June 2008 SePex model.   *See generally* Pl.'s Resp. to Def.'s Mot. to Exclude Other Incidents Attach. 1, Summary of Complaints – Sepex Units, ECF No. 156-1; Pl.'s Resp. to Def.'s Mot. to Exclude Other Incidents Attach. 2, BBE Issue Event Log, ECF No. 156-2.   As discussed above, Plaintiffs did not point to sufficient evidence to establish that pre-June 2008 vehicles are substantially similar to post-June 2008 vehicles in terms of

their risk of unintended acceleration.   For these reasons, Plaintiffs will not be permitted to introduce P-115 and P-193. If Plaintiffs believe that the present record does support a finding that pre-June 2008 vehicles are substantially similar to the Vehicle, Plaintiffs shall file a motion for reconsideration of this issue within seven days of today's Order with a specific citation to the record evidence supporting substantial similarity.

      E.   Summary of "Other Incident" Evidence Rulings

As discussed above, Plaintiffs may introduce evidence of the Dear unintended acceleration incidents and the Knight/Stice accident.   Plaintiffs may not introduce evidence of the Smith accident or the BBE incident reports.

**V.   BBE's Objections to Plaintiffs' Trial Exhibits**

BBE objects to several exhibits on Plaintiffs' exhibit list, contending that they should be excluded from trial because they were not produced during discovery.   BBE withdrew its objections to P-585 to P-599 and P-2964, so those exhibits will be permitted at trial.   In response to BBE's objections, Plaintiffs withdrew the following exhibits:   P-615 to P-617, P-2965, P-2966, P-2968, and P-2969.   Those exhibits will not be permitted at trial.

As to the remaining exhibits, which include regulatory documents, videos, and photographs, Plaintiffs contend that BBE

did not request them and/or that the documents were produced as soon as they were added to Plaintiffs' file.  BBE requested "[c]opies of all documents that [Plaintiffs] contend support or tend to support any claims or allegations [they] assert against Defendants in [their] Complaint that [they] have not previously produced or are not producing in response to [BBE's] document requests."  Def.'s Reply to Notice of Exs. Not Produced by Pls. Prior to Disclosure as Trial Exhibits Ex. B, Def.'s 1st Req. for Produc. of Docs. 9 ¶ 10, ECF No. 161-2.  The term "document" includes "reports," "books," "all writings of any kind," "photographs," and "video recordings."  *Id.* at 2-3 ¶ K.  Based on this request, the Court concludes that BBE did request the disputed exhibits.  Accordingly, the exhibits should have been produced during discovery.

In general, if an exhibit was requested during discovery but not produced until after the close of discovery, then the Court will not permit the exhibit at trial unless a compelling reason is given for the proffering party's failure to disclose it during discovery.  The Court finds that Plaintiffs did not, in the abbreviated reasons given in their response and sur-reply to BBE's objections, establish a compelling reason for their failure to produce the exhibits during discovery.  Therefore, the following exhibits will not be permitted at trial: P-361, P-

403, P-409, P-600 to P-614, P-2934 to P-2950, P-2954 to P-2957, P-2963, and P-2970.

## VI.   Textron Defendants' Motion for Reconsideration

The Textron Defendants ask the Court to reconsider its order denying their summary judgment motion. The summary judgment motion focused on the Textron Defendants' contention that they did not have adequate information to notify the Vehicle's owner of the recall—implying that they would have sent him notice if they had his name and address. *See generally* Defs.' Br. in Supp. of Mot. for Summ. J., ECF No. 92-1. The Textron Defendants now contend that the Court erroneously decided that the recall they undertook included direct notice to BB Buggies customers. The Textron Defendants assert that it is undisputed that the recall they undertook did not encompass direct notice to owners of BB Buggies vehicles and ask the Court to find that their recall was reasonable as a matter of law.

The Textron Defendants did not, in their statement of material facts, clearly assert that the recall they undertook did not include direct notice. Plaintiffs, however, pointed out that the corrective action plan approved by the Consumer Product Safety Commission ("CPSC") "made no provision to address the consumers who bought directly from the factory." Pls.' Resp. to Defs.' Statement of Material Facts ¶ 26, ECF No. 96. Seizing on this statement, the Textron Defendants argue that because the

CPSC did not include direct notice to customers in its list of actions included in the approved corrective action plan, there is no fact question as to whether the Textron Defendants undertook a duty to provide direct notice to customers.

The Textron Defendants are correct that the CPSC stated that the corrective action plan included a variety of notice methods, including press releases and recall notices posted in stores.  The CPSC letter did not list any letters to customers, via dealers or otherwise.  Defs.' Mot. for Summ. J. Ex. D, Letter from T. Topka to M. Hall (Dec. 22, 2010), ECF No. 92-10.

When the CPSC approved the Textron Defendants' action plan, the CPSC stated that the Textron Defendants should "continue the corrective actions implemented and initiate any others contained in the [corrective action plan]."  *Id.* at 2.  The Court thus looked to the proposed corrective action plan the Textron Defendants sent to the CPSC, which the Textron Defendants cited in support of their summary judgment motion.  Defs.' Mot. for Summ. J. Ex. C, Letter from M. Hall to T. Topka (Dec. 10, 2010), ECF No. 92-9.  That proposed corrective action plan included a "draft letter to owners" and stated that the "owner letter" would "be sent to all known owners of Classic Buggies purchased through June 2010."  *Id.* at 1.  Based on the corrective action plan proposal letter, the Court found a genuine fact dispute on whether the Textron Defendants undertook a duty to send recall

notices directly to BB Buggies owners.  Even if there were no such factual dispute, there would still be a fact question on the reasonableness of the recall program.  If the recall program did not include any direct notice to known BB Buggies owners as the Textron Defendants argue, then a jury could conclude that the Textron Defendants did not exercise reasonable care in conducting the recall.

For these reasons, the Textron Defendants' Motion for Reconsideration (ECF No. 164) is denied.  There is no need to certify this straightforward issue to the Georgia Supreme Court.

CONCLUSION

For the reasons set forth above, BBE's motion to limit the testimony of R. Patrick Donahue (ECF No. 108) is denied.  BBE's motion to limit the testimony of Lawrence A. Wilson (ECF No. 109) is granted in part and denied in part.  BBE's motion to limit the testimony of Paul R. Lewis (ECF No. 111) is denied. Plaintiffs' motion to strike those motions as untimely (ECF No. 112) is denied.  BBE's motion to exclude prior vehicle models (ECF No. 135) is granted.  BBE's motion to exclude dissimilar vehicles (ECF No. 137) is granted in part and denied in part. BBE's motion to exclude other incidents (ECF No. 138) is granted in part and denied in part.  The Court sustains BBE's objections as to the following exhibits: P-361, P-403, P-409, P-600 to P-614, P-615 to P-617, P-2934 to P-2950, P-2954 to P-2957, P-2963,

P-2965, P-2966, and P-2968 to P-2970.  The Textron Defendants'
Motion for Reconsideration (ECF No. 164) is denied.


IT IS SO ORDERED, this 8th day of November, 2013.

                              S/Clay D. Land
                              CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE